## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Sep 11, 2018

IN RE:

**RENFROW, Miranda Kristin,**

             **Debtor.**

**Case No. 17-10385-R**
**Chapter 7**

**MIRANDA KRISTIN RENFROW,**

             **Plaintiff,**

**v.**

**CARRIE PETTIGREW and THOMAS MORTENSEN,**

             **Defendants.**

**Adv. No. 17-01038-R**

### ORDER GRANTING IN PART AND DENYING IN PART
### DEFENDANTS' OBJECTION AND
### REQUEST TO SET-ASIDE THE CLERK'S ENTRY OF DEFAULT

Before the Court is the Objection and Request to Set-Aside the Clerk's Entry of Default (Adv. Doc. 22) filed by Defendants Carrie Pettigrew and Thomas Mortensen ("Request to Set-Aside Default")[1] and the response filed by Plaintiff Miranda Kristin Renfrow (Adv. Doc. 23).[2] An evidentiary hearing was held on April 18, 2018. Upon consideration of the pleadings, the evidence admitted at the hearing, and the applicable law, the Court finds and concludes as follows:

---

[1] Plaintiff's Exhibit 104.

[2] Plaintiff's Exhibit 105.

## I.     Jurisdiction.

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334, 157(a) and (b)(2) and (b)(2)(O), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

## II.     Procedural Background.

On October 26, 2017, Plaintiff Renfrow commenced this adversary proceeding by filing a Complaint for Violation of the Permanent Discharge Injunction against Defendants Pettigrew and Mortensen (the "Complaint"). Renfrow alleges that Pettigrew, a creditor, and Mortensen, her attorney, violated the discharge injunction entered in Renfrow's Chapter 7 bankruptcy case by refusing to dismiss prepetition tort claims pending against Renfrow in a Tulsa County District Court lawsuit. Renfrow requests actual damages, including expenses incurred in retaining counsel to appear and attend conferences in the Tulsa County lawsuit, and to correspond with Mortensen in an effort to convince him that the claims were discharged. She also requests punitive damages. Neither Pettigrew nor Mortensen answered or otherwise responded to the Complaint.

On January 31, 2018, a Clerk's Entry of Default was docketed (Adv. Doc. 11) and on February 3, 2018, Renfrow filed a Motion for Default Judgment (Adv. Doc. 12). On February 6, 2018, the Court entered an order setting the motion for an evidentiary hearing to consider and determine the amount of damages to which Renfrow was entitled. The Court mailed the order to Mortensen and Pettigrew (c/o Mortensen). The hearing was to be held on February 21, 2018.

2

On February 20, 2018, the day before the hearing, Mortensen filed a pleading on behalf of Pettigrew and himself entitled Motion to Set Aside and Vacate the Entry of Default Judgment.[3]   Because Mortensen had not obtained the credentials necessary to file electronically with this Court, he filed the motion in paper form.[4]   Mortensen appeared at the February 21st hearing, and although the Court did not consider the deficient and untimely motion, Mortensen orally represented that he and Pettigrew had not been served with the Complaint, that they had been unaware that an adversary proceeding was pending against them, and that if permitted to file an answer, they could assert a meritorious defense.  In light of their claim that they had no knowledge of the Complaint until after the Clerk's Entry of Default, the Court adjourned the hearing on damages to allow Pettigrew and Mortensen to properly file an appropriate motion and to give Renfrow an opportunity to respond in writing.

Accordingly, Mortensen and Pettigrew filed the Request to Set-Aside Default, Renfrow objected, and a hearing was held on April 18, 2018.  At the hearing (the "April 18th Hearing"), the Court heard testimony from Pettigrew and Mortensen, and from Renfrow's counsel, Ron Brown.

---

[3]Although the motion requested vacation of a default judgment, a judgment has not yet been entered.

[4]The Court's local rules require attorneys to file all pleadings electronically.  See Local Rule 5005-1(A) and (C), and CM/ECF Administrative Guide of Policies and Procedures.

3

## III.    Findings of fact.

Renfrow filed a petition for relief under Chapter 7 of the Bankruptcy Code on March 10, 2017 ("Petition Date").  Prior to the Petition Date, Renfrow practiced ophthalmology through her wholly-owned corporation, Envision Medical & Surgical Eye Care, P.C. ("Envision").  In 2012 or 2013, Envision, through Renfrow, purchased the assets of Dr. Joe C. Cole's established ophthalmology practice from the Joe C. Cole Revocable Trust ("Trust").  At various times, Envision and Renfrow allegedly executed, and later defaulted on, promissory notes and security agreements in favor of the Trust.  On May 31, 2016, Courtney Grogan, Successor Trustee of the Trust, sued Renfrow and Envision in Tulsa County District Court to recover on the notes (the "Grogan Action").

At the time Envision purchased the practice, Pettigrew was Dr. Cole's office manager. Envision retained Pettigrew as its office manager, and Pettigrew continued in that capacity until she was terminated in August 2015.  In December 2015, Envision filed a petition in Tulsa County District Court against Pettigrew alleging embezzlement and conversion (the "Envision Action").   In January 2016, Pettigrew, represented by Mortensen, filed "Defendants [sic] Answer and Counterclaim"[5] wherein Pettigrew (1) denied committing conversion or embezzlement, (2) asserted a claim against Envision and Renfrow for defamation, and (3) asserted a claim against Renfrow for intentional infliction of emotional distress (the two claims against Renfrow are hereinafter referred to as the "Prepetition Tort

---

[5]Defendants' Exhibit E.

Claims"). Pettigrew added Renfrow to the caption of the case as follows: "Miranda Renfrow, Individually, Counter-Defendant."[6] A year later, in January 2017, the Envision Action was consolidated with the Grogan Action for the purpose of discovery.[7] After Renfrow filed her bankruptcy petition, Brown filed a Suggestion of Bankruptcy in the Envision and Grogan Actions.[8]

In her bankruptcy schedules, Renfrow listed Grogan and the Trust as having a contingent, unliquidated, and disputed claim, and gave notice to them through Clark Phipps, their counsel of record in the Grogan Action. Renfrow did not list Pettigrew as having a claim, and Brown admitted that he misinterpreted the state court docket sheets and believed that Phipps was representing all parties in the litigation with claims against Renfrow.[9] It is undisputed that neither Pettigrew nor Mortensen appeared on Renfrow's mailing matrix, and that the Notice of Chapter 7 Bankruptcy Case containing, among other things, the date for the meeting of creditors and the deadline of June 5, 2017, to object to dischargeability of debts, was not mailed to them.

On April 5, 2017, the Chapter 7 trustee presided over the meeting of Renfrow's creditors. Pettigrew attended the meeting with Phipps. Accordingly, even though she did

---

[6]Id.

[7]Plaintiff's Exhibit 106 at 6.

[8]Defendants' Exhibits A, B, and C. It is undisputed that Brown did not send a copy of the Suggestion of Bankruptcy to Pettigrew or to Mortensen.

[9]Transcript of Hearing of April 18, 2018 ("Tr. 4/18/18") (Adv. Doc. 42) at 104-05.

5

not receive the Notice of Chapter 7 Bankruptcy Case through the mail, Pettigrew had actual notice of Renfrow's bankruptcy filing at least as of April 5, 2017, if not before.  By his own admission, Mortensen had actual notice of Renfrow's bankruptcy in late March or early April of 2017.[10]

In May 2017, Phipps and/or and his co-counsel, Dru Prosser, conducted a Rule 2004 examination of Renfrow.  Desiring to continue discovery in the consolidated Grogan and Envision Actions,  Phipps and Prosser decided to draft a motion for relief from the automatic stay.  They asked Mortensen to join in the motion on behalf of Pettigrew, and Mortensen agreed.[11]

On May 26, 2017, Phipps and Prosser filed formal entries of appearance in Renfrow's bankruptcy case on behalf of Grogan.  Mortensen did not file an entry of appearance on behalf of Pettigrew at that time or at any other time during the pendency of the bankruptcy case.[12]

Phipps/Prosser drafted the Joint Motion of Creditors/Movants Courtney Grogan and Carrie Pettigrew for Relief from Automatic Stay and Notice of Opportunity for Hearing ("Joint Motion")[13] and sent it to Mortensen for review.  Mortensen authorized Phipps/Prosser

_____

[10]Id. at 52.

[11]Id. at 59, 72-73.

[12]Id. at 60.

[13]Plaintiff's Exhibit 109.

to affix his e-signature to the Joint Motion.[14]  On June 1, 2017, Phipps electronically filed the Joint Motion on behalf of Grogan, the Trust, and Pettigrew.  Consequently, in the Court's CM/ECF system and on Renfrow's matrix, Phipps was listed as counsel of record for Pettigrew.[15]  Because Mortensen never entered an appearance on behalf of Pettigrew, or filed any pleading electronically in the bankruptcy case, his name and affiliation with Pettigrew never appeared in the CM/ECF system or on the matrix.

In the Joint Motion, Grogan and Pettigrew sought a declaration that the automatic stay did not preclude them from proceeding in the state court cases against non-debtor Envision.[16]  In addition, they sought a declaration that the stay did not apply to Pettigrew's "third-party claim against Miranda Renfrow, D.O. ('Debtor'), who practiced opthalmology through Envision, for defamation and intentional infliction of emotional distress"[17] on the ground that "judgments for intentional torts are non-dischargeable under 11 U.S.C. § 523(a)(6)."[18]

---

[14]Tr. 4/18/18 at 72.

[15]On and after June 1, 2017, the matrix listed Pettigrew as a creditor, and notices addressed to Pettigrew were sent in care of Phipps at his law office address.  All CM/ECF Notices of Electronic Filing ("NEF") addressed to Pettigrew were electronically transmitted to "Kent Clark Phipps on behalf of Creditor Carrie Pettigrew" at Phipps's email address. See, e.g., NEF Receipt dated 6/7/17, Main Case Doc. 31.

[16]Plaintiff's Exhibit 109 at 3, ¶ 8, and at 4, ¶ 12 (in the alternative, they sought relief from the automatic stay).

[17]Id. at 1, ¶ 3.

[18]Id. at 4, ¶ 11.

In her response to the Joint Motion, Renfrow conceded that the automatic stay did not extend to Envision.  Renfrow objected to the Joint Motion to the extent Pettigrew sought to continue prosecution of the Prepetition Tort Claims, however.[19]  Pettigrew had not filed an adversary proceeding objecting to discharge of the Prepetition Tort Claims, and the deadline to do so had expired.  Thus, Renfrow argued, stay relief to allow Pettigrew to pursue dischargeable tort claims was not warranted.  The Court entered an order setting the contested matter for hearing on June 21, 2017, and electronically transmitted it to counsel of record for the parties as they appeared in the Court's CM/ECF system.  Thus, Pettigrew's notice of the hearing was transmitted to Phipps.[20]

Meanwhile, on June 15, 2017, an Order of Discharge was entered discharging all of Renfrow's dischargeable debts.[21] The Clerk of the Court sent the Order of Discharge to the Bankruptcy Noticing Center, which mailed the Order to all parties in interest as they appeared on Renfrow's official mailing matrix.[22]  Again, Pettigrew was given notice of the Order of Discharge through Phipps.[23]

---

[19]Main Case Doc. 31.

[20]Main Case Doc. 32.

[21]Main Case Doc. 34.

[22]Main Case Doc. 35 (BNC Certificate of Mailing).  A copy of the Order of Discharge was also electronically transmitted to all counsel who had entered appearances in the case.

[23]Id.

8

On June 20, 2017, Phipps's office emailed Mortensen a copy of Renfrow's response to the Joint Motion, along with a note stating "[w]e just realized that you weren't on the certificate of service in the bankruptcy proceeding.  Please see attached for a copy of Ms. Renfrow's Response to our Joint Motion"[24]  Still, Mortensen did not enter an appearance in the bankruptcy case, so the record continued to reflect that Phipps was Pettigrew's counsel.  Mortensen never checked the bankruptcy docket sheet to see whether the Joint Motion, which he knew was opposed by Renfrow, had been set for hearing, or if it had been otherwise resolved, or if there were other pleadings or orders filed in the bankruptcy case that might affect his client's rights.

Phipps and Brown appeared at the hearing on the Joint Motion on behalf of Grogan and Renfrow respectively.  Mortensen did not appear.[25]  After hearing arguments of counsel, the Court ruled, as a matter of law, that the automatic stay did not apply to Envision, and that the joint movants' request for stay relief to prosecute the Prepetition Tort Claims was moot because the automatic stay had been superseded by the discharge injunction.[26]

---

[24]Defendants' Exhibit K.  See also Tr. 4/18/18 at 60-62.

[25]The Court passed the matter to the heel of the docket while Phipps and Brown attempted – unsuccessfully – to contact Mortensen by phone.  Plaintiff's Exhibit 110 at 3.

[26]The Court memorialized the ruling in a written order that provided:

Pursuant to 11 U.S.C. § 362(c)(2)(C), the automatic stay against acts against Renfrow terminated on June 15, 2017, and was replaced by the discharge under 11 U.S.C. § 727, the effect of which is governed by 11 U.S.C. § 524. Accordingly, Movants request for stay relief as to Renfrow is denied as moot.

Main Case Doc. 37.  Again, the Order was electronically transmitted to counsel of record.

On August 1, 2017, after Renfrow's discharge had been entered, Grogan filed a Second Amended Petition against Envision and Renfrow in the Grogan Action. Renfrow retained Brown to defend against these claims and to enforce her discharge.[27] On August 21, 2017, Renfrow answered the Second Amended Petition. Also on August 21, 2017, Envision dismissed its conversion and embezzlement claims against Pettigrew in the Envision Action. Brown mailed copies of Envision's dismissal to Mortensen, Phipps, and Prosser the same day.[28]

On September 11, 2017, Tulsa County District Judge Rebecca Nightingale held pretrial conferences in the Grogan and Envision Actions. Brown advised Judge Nightingale that Envision had dismissed its claims against Pettigrew, and that Pettigrew's Prepetition Tort Claims against Renfrow had been discharged. Mortensen disagreed, however, and took the position that "the bankruptcy discharge was not effective on a defamation claim"[29] and that the discharge did not bind Pettigrew because she was never listed as a creditor in the

---

[27]On August 26, 2017, Renfrow filed a Complaint for Violation of the Discharge Injunction against Grogan and her counsel (Adversary Proceeding No. 17-1027). In December 2017, the Grogan Action was tried in state court before a jury and resulted in a sizable verdict against Renfrow. The discharge violation proceeding against Grogan and her counsel is set to be tried later this year.

[28]Plaintiff's Exhibit 114. Mortensen claims that he did not receive the dismissal and suggests that Brown did not mail it to him, notwithstanding Brown's certificate of service stating that he had. Tr. 4/18/18 at 92. The Court has no reason to doubt the accuracy of Brown's certificate of service.

[29]Defendants' Exhibit G.

bankruptcy case.[30]  In short, Mortensen refused to acknowledge or respect the effect of the discharge, leaving Renfrow vulnerable to further litigation in the Envision Action.  Judge Nightingale continued the conference to October 2, 2017, to allow Mortensen an opportunity to analyze the effect of Renfrow's discharge on Pettigrew's Prepetition Tort Claims.

Immediately after the pretrial conference, Brown drafted a letter to Mortensen documenting their exchange before Judge Nightingale, and demanded that Pettigrew –

> immediately dismiss, with prejudice, any claims against Miranda Renfrow.  If a dismissal has not been filed of record on or before Friday, September 29, 2017, my client will be forced to bring an adversary action in bankruptcy court against your client and your firm for violation of the bankruptcy code's discharge injunction, 11 USC § 524.  You and your client could be held responsible for my attorney fees and costs, and emotional distress damages that continue to accrue to my client.[31]

On September 15, 2017, Mortensen responded in an email –

> I reviewed the bankruptcy pleadings again and still could not find where Ms. Renfrow listed Mrs. Pettigrew as a creditor. Although the Petition lists the [Envision Action], there is no mention of the counterclaim, and there is no indication in the Petition (or any other pleading) that Ms. Renfrow was seeking to discharge any potential claim of Mrs. Pettigrew's.  Moreover, there was not a single notice sent to me as Mrs. Pettigrew's attorney that identified Mrs. Pettigrew as a creditor that had a claim to be discharged in the bankruptcy proceedings.  For those reasons, I disagree with your position that Mrs. Pettigrew's defamation counterclaim was discharged in the bankruptcy proceedings.
>
> As an aside, if there had been any notice that Ms. Renfrow was seeking to discharge the defamation counterclaim in the bankruptcy, I was fully prepared

---

[30]Tr. 4/18/18 at 102.  Brown testified that Mortensen said "the bankruptcy does not apply to my client because she was not on the list."  Id.

[31]Defendants' Exhibit G.

to seek a finding that the claim was non-dischargeable due to an abundance of evidence that Ms. Renfrow's actions were intentional - as opposed to negligent - and that she fully intended to cause an injury to Mrs. Pettigrew.[32]

Mortensen asked Brown to supply him with authority supporting his position that the claims had been discharged.

Brown replied the same day by email. He emphasized that Pettigrew had actual notice of the bankruptcy and had appeared and participated in the case as a creditor when she sought stay relief to pursue the Prepetition Tort Claims, so the fact that she was not listed as a creditor on the schedules or on the matrix was not relevant to whether her claims were discharged.[33] Brown also provided Mortensen with authority establishing that in no-asset cases, claims of unscheduled creditors are nevertheless discharged.[34] Still, Pettigrew and Mortensen refused to dismiss the Prepetition Tort Claims by Brown's September 29th deadline.

So Brown and Mortensen reappeared before Judge Nightingale on October 2, 2017, and Renfrow, through Brown, paid a deposit to a court reporter to make a record. Brown outlined a chronology of relevant events in the bankruptcy case to establish that Pettigrew and Mortensen had actual notice of the bankruptcy and the discharge, and that notwithstanding the discharge, Pettigrew and Mortensen continued to assert tort claims

---

[32]Plaintiff's Exhibit 111.

[33]Id.

[34]Id.

12

against Renfrow.[35]  Brown advised that because Pettigrew and Mortensen refused to dismiss the claims, he would have to reopen the bankruptcy case and file a discharge violation complaint.[36]  For his part, Mortensen again insisted that Pettigrew did not receive proper notice of the bankruptcy case, and stated "I need to file a motion to reopen to get a finding over there [in the bankruptcy court] that this claim – it is not a debt, it is a claim at this point in time [–] that it is non-dischargeable.  So we are going to have to go do work next door I believe."[37]  Brown asked that the status conference be stricken to be reset upon application.[38] Mortensen agreed that the conference be stricken "so that we can go next door."[39]  Judge Nightingale struck the status conference and administratively closed the case "to be reopened upon application once you all have figured out across the street what is happening, because it sounds like there is a difference of opinions, and I will let the learned bankruptcy Judge Rasure manage that and rule."[40]

 As of October 26, 2017, the Prepetition Tort Claims were still pending so Renfrow filed her Complaint against Pettigrew and Mortensen.  Brown personally printed out copies of the summonses and the Complaint, "placed them in an envelope, affixed the postage and

---

[35]Plaintiff's Exhibit 116 at 2-4.

[36]Id. at 4.

[37]Id. at 4-5.

[38]Id. at 3-4.

[39]Id. at 4.

[40]Id. at 5.

put the mail into the mail slot."[41]  Brown then filed a certificate of service certifying, under

penalty of perjury, that on November 2, 2017, he served the summons and Complaint on

Mortensen by first class mail addressed to "1331 S Denver Ave Tulsa OK 74119" and to

Pettigrew "c/o Thomas Mortensen" at the same address.[42]  Mortensen has confirmed that the

address on the certificate of service was and is his law office address.[43]  Mortensen denies

receiving the summonses and Complaints mailed by Brown.

On December 6, 2017, the Grogan Action against Renfrow and Envision was tried to

a jury.  Grogan called Pettigrew to testify about the Trust's extensions of credit to Renfrow

in connection with the sale of Dr. Cole's practice. Brown, representing Renfrow, cross-

examined Pettigrew.  In the course of the cross-examination, Brown asked Pettigrew to admit

that she had been sued by Renfrow for violating her discharge injunction.[44]  Pettigrew

admitted that her defamation claim against Renfrow was still pending, but denied knowing

that she had been sued.  She also volunteered that she "never received a notice that anything

---

[41]Tr. 4/18/18 at 101.

[42]Adv. Docs. 3 and 4.  Brown filed a corrected certificates of service on January 22, 2018, in order to affix cover sheets to the certificates.  Adv. Docs. 7 and 8.  The substance of the certifications did not change.

[43]Tr. 4/18/18 at 64-65.

[44]Partial Transcript of Proceedings Before the Hon. Daman H. Cantrell on December 6, 2017 (Plaintiff's Exhibit 112) at 56-58.

between she and I were being discharged [sic]"[45] and "[s]o far as I'm concerned, it [the discharge] doesn't exist."[46]

When the trial recessed for lunch, Pettigrew went to Mortensen's office and asked him about the lawsuit against her that Brown mentioned. She learned that Mortensen "knew there had been a filing but didn't believe that there was substantial correct evidence that it would ever go anywhere."[47]  Pettigrew and Mortensen reviewed the Complaint, discussed it, and concluded that it had no merit because, they believed, the discharge did not apply to Pettigrew and they had not done anything to violate the discharge.[48]  Mortensen and Pettigrew had actual notice of the substance of this adversary proceeding on December 6, 2017, *i.e.*, that Renfrow was suing them both for continuing to pursue the Prepetition Tort Claims in the Envision Action in violation of this Court's discharge injunction, yet they still took no action toward dismissing the Prepetition Tort Claims.

On January 31, 2018, the Clerk docketed an Entry of Default in this proceeding pursuant to Bankruptcy Rule 7055.[49]  Renfrow then filed a Motion for Default Judgment, seeking an award of actual damages in the amount of $5,521.00, equitable relief in the form

---

[45]Id. at 57.

[46]Id. at 58. Pettigrew reaffirmed that view at the April 18th Hearing, stating that she did not believe the discharge applied to her because she was not served with a copy of the discharge. Tr. 4/18/18 at 37.

[47]Tr. 4/18/18 at 26-27.

[48]Id. at 37-38, 41-42.

[49]Adv. Doc. 11.

of an order directing dismissal of the Prepetition Tort Claims, and exemplary damages in the amount of $55,210.00.[50]   The Court set the Motion for Default Judgment for hearing on February 21, 2018. On February 6, 2018, even though neither party responded to the Complaint, the Court mailed the order setting hearing to Mortensen and Pettigrew (c/o Mortensen) at the 1331 South Denver address.

Not until the day before the hearing did Mortensen file anything in opposition to the Motion for Default Judgment.  At the hearing, Mortensen blamed his untimely response on his own negligence – *i.e.*, he had accumulated a "stack of mail" on his desk that he did not open until Friday, February 16, 2018, and included in the stack was the order setting hearing that the Court mailed to him on February 6, 2018.[51]  Upon his discovery of the order setting hearing, Mortensen emailed Brown, and, claiming ignorance of "some claim you apparently filed back in October," demanded that Brown withdraw the motion.[52]  Further, he stated "it appears that you filed some proof of service on me and [Pettigrew] of your petition [sic] - however - I can absolutely affirm that **you never submitted the Petition [sic] to my office**."[53]   Mortensen also accused Brown of "never submitting to [his] attention" the certificates of service, the request to enter default, and the Motion for Default Judgment.[54]

---

[50]Adv. Doc. 12.

[51]Plaintiff's Exhibit 113 at 7-8.

[52]Defendants' Exhibit H.

[53]Id. (emphasis original).

[54]Id.

16

Mortensen also stated that he was "confused and baffled by the position you seek in your petition and would like an opportunity to discuss this matter with you at your earliest convenience. . . . I don't recall that I - or [Pettigrew] - have done a single thing - filed a single pleading - or continued any collection attempts whatsoever."[55]

In response, Brown confirmed to Mortensen that he had mailed two sets of the summons and Complaint to Mortensen in early November 2017, and advised that under the applicable rules of procedure, he was not required to mail default pleadings to defendants that had not entered appearances. Brown again requested that Mortensen dismiss the Prepetition Tort Claims.[56] After the February 21st hearing, Mortensen did file a motion to dismiss the claims against Renfrow in the Envision Action,[57] but as of the date of the April 18th Hearing, the motion had not been granted. The Prepetition Tort Claims remain pending.[58]

## IV.    Conclusions of law.

Rule 55(c) of the Federal Rules of Civil Procedure, made applicable in this proceeding by Bankruptcy Rule 7055, provides that the court "may set aside an entry of default for good cause." Cause may be established by showing an appropriate excuse or explanation for the default, the existence of a meritorious defense to the action, good faith on the part of the

---

[55]Id.

[56]Id.

[57]Plaintiff's Exhibit 115.

[58]The Court takes judicial notice of the current docket sheet in the Envision Action which indicates that as of September 10, 2018, the motion to dismiss is still pending.

defaulting party, and the absence of any substantial prejudice to the party not in default.[59] The motion for relief from the default must be made promptly upon learning of the entry of default. Mortensen and Pettigrew, as the parties seeking to set aside a default, have the burden of proving justification for relief from the entry of default[60] and must show that their proposed defense is legally sufficient.[61]

      As cause, Mortensen and Pettigrew assert that (1) they were not properly served with the summons and Complaint; (2) they had no knowledge of the Complaint until receiving the order setting hearing on the Motion for Default Judgment; (3) they are blameless for the default; and (4) they have a meritorious defense to the Complaint.

**A.**      **Service of the Complaint – the Mailbox Presumption**.

      Under Bankruptcy Rule 7004(b), service of process of an adversary proceeding summons and Complaint upon an individual may be accomplished "by first class mail postage prepaid . . . by mailing a copy of the summons and complaint to the individual's dwelling house or usual place of abode or to the place where the individual regularly

---

[59]See, e.g., 10A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2692 (4TH ED. 2018).

[60]The party seeking relief from default must plead and prove justification for relief on its merits. Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1445 (10th Cir. 1983).

[61]Id., *quoting* Olsen v. Stone (In re Stone), 588 F.2d 1316, 1319 (10th Cir. 1978).

conducts a business or profession."[62]  Service by mail is considered complete upon mailing.[63]

Federal courts adhere to the "Mailbox Presumption" wherein "[a] proper mailing of the

summons and complaint raises a rebuttable presumption of due delivery to the addressee.

Accordingly, the burden to present 'strong and convincing proof' of insufficiency of service

rests upon the defendant."[64]

The Court has found that Brown personally stuffed a summons and Complaint into

each of two envelopes, one addressed to Mortensen and one to Pettigrew c/o Mortensen,

addressed them to 1331 South Denver, Tulsa, Oklahoma, 74119, the undisputed mailing

address of Mortensen's law office, affixed sufficient postage, and dropped them in the mail

slot.   Brown then filed a certification that he served the summons and Complaint on

Mortensen and Pettigrew by regular first-class U.S. mail, postage pre-paid on November 2,

2017. There is no evidence that the envelopes were returned to Brown as undeliverable.

Mortensen suspects that Brown did not mail the documents to him and calls Brown's

certificates of service a "sham."[65]   He contends that he did not receive other mail Brown

---

[62]Fed. R. Bankr. P. 7004(b)(1).

[63]Saffa v. Wallace (In re Wallace), 316 B.R. 743, 747 (B.A.P. 10th Cir. 2004); Fed. R. Bankr. P. 9006(e).

[64]Nikwei v. Ross School of Aviation, Inc., 822 F.2d 939, 941 (10th Cir. 1987) (citations omitted).

[65]Tr. 4/18/18 at 90.  Brown practices before this Court on a regular basis and has never given the Court any reason to doubt his integrity. The Court has no reason to disbelieve Brown's certificate of service or his testimony that he personally mailed the summons and Complaint to the 1331 South Denver address.

claimed to have sent him at the 1331 South Denver address,[66] and complained that "I've had that happen . . . in other cases too. . . . It's upsetting to me to hear people say they served me with something and I never got it."[67]   This self-serving speculation is hardly clear and convincing evidence rebutting the presumption that the summons and Complaint were duly delivered by first class mail to Mortensen's law office.[68]   Mortensen did not present any independent evidence to corroborate non-receipt, such as testimony of the person responsible for receiving and distributing the mail at his office.

Brown established that he properly mailed the summons and Complaint to Mortensen at the place he regularly conducts his law practice.   Mortensen's denial of receipt is not convincing.   Accordingly, the Court concludes that service of process upon Mortensen was properly effected under Bankruptcy Rule 7004(b)(1) on November 2, 2017, which triggered an obligation file a responsive pleading under Bankruptcy Rule 7012(a) within 30 days of the issuance of the summons.

---

[66]Id. at 92 (Mortensen claimed not to have received a copy of Envision's voluntary dismissal of its claims against Pettigrew in the Envision Action, notwithstanding Brown's certificate of service).

[67]Id.   The fact that Mortensen apparently routinely fails to receive mail that other lawyers certify had been sent to him gives the Court pause as to Mortensen's compliance with his obligation to promulgate effective office procedures and secure his mailbox so that his clients are not prejudiced by his failure to receive his mail.   In addition, the fact that Mortensen sometimes sets aside his mail, unopened, for extended periods of time gives the Court pause as to Mortensen's compliance with his professional responsibility to act with reasonable diligence and promptness.   See ORPC Rule 1.3.

[68]See, e.g., In re Sunland, 536 F.R. 920, 926 (Bankr. D. N.M. 2015), and cases cited therein.

### B.     Actual knowledge of the Complaint.

Pettigrew's testimony established, without a doubt, that on December 6, 2017, she and Mortensen obtained actual knowledge that Renfrow had sued them for violating the discharge injunction. Pettigrew learned about Renfrow's discharge injunction lawsuit from Brown during her testimony at the jury trial in the Grogan Action.[69]  She reviewed and/or discussed the Complaint with Mortensen that same day.[70]  She acknowledged that she became familiar with the substance of the Complaint (*i.e.*, allegations that she violated Renfrow's discharge) through Brown's questioning in the Grogan Action and her discussion with Mortensen.[71]  Pettigrew and Mortensen concluded that the Complaint lacked merit

---

[69]"Q [by Brown]. So is it fair to say that in December, early December 2017, you knew there was a lawsuit against you? A [by Pettigrew]. I knew. You told me there was a lawsuit against me." Tr. 4/18/18 at 26.  Pettigrew: "I never knew the Complaint existed until you told me." Id. at 42.

[70]"Q [by Brown].  Based on that information did you go and look to see whether or not there was in fact a lawsuit against you? A [by Pettigrew]. As soon as I was released from the bench [sic] I went to Mr. Mortensen's office.  Q.  So Mr. Mortensen also knew at that point that there was a lawsuit against you? A.  Yes." Id. at 26.  "Q [by Brown]. [Y]ou met with [Mortensen] shortly thereafter and you reviewed the complaint that I told you about; right? A [by Pettigrew].  Yes." Id. at 37-38. Later, Pettigrew backtracked somewhat from that testimony, stating that Mortensen did not actually show her a copy of the Complaint that day, but she testified that he did answer questions about the violation of discharge lawsuit that she had just learned had been filed against her. Id. at 41. Pettigrew: "I went to [Mortensen's] office during the lunch break during the trial and said what in the hell is [Brown] talking about. . . . [Mortensen] said we're going to have to get this straightened out, go back to Nightingale." Id. at 42.

[71]"Q [by Brown].  So is it fair to say in December you knew what the substance of the complaint was all about, this adversary?  A [by Pettigrew].  After the fact, yes.  After you asked the questions, yes." Id. at 39.

because in their view, they were not bound by the discharge and they had not attempted to collect a debt from Renfrow.[72]

At the April 18th Hearing, Mortensen contradicted Pettigrew's testimony regarding their knowledge and discussion of the discharge violation proceeding. "I know Ms. Pettigrew said that we talked about the . . .violation of the discharge injunction.  There was not a discussion about a violation of the discharge injunction in December.  I could advise the Court of that."[73]  Pettigrew's recollection of the events that occurred on December 6, 2017, however, was detailed and specific. She admitted that she learned that Renfrow had sued her for violating the discharge from Brown during the trial of the Grogan Action, that she met with Mortensen that very day during a break in the trial, that Mortensen was aware the lawsuit had been filed, that Mortensen had a copy of the Complaint, that they discussed the allegation that she violated the discharge, and that they concluded that there was no basis to it.  The Court finds Pettigrew's admissions against interest considerably more credible than Mortensen's self-interested blanket denial.

Although Renfrow established that as of December 6, 2017, Pettigrew knew that Renfrow had sued her to enforce her discharge injunction, actual knowledge of a pending

---

[72]"Q [by Brown]. So it is your position that hey, if I never actually received [the discharge notice] then it doesn't count?  A. [by Pettigrew].  Isn't that the definition of legal service?  Q.  Okay.  I'm asking you a question. Yes or no.  A.  Yes."  Id. at 37.  Pettigrew: "I don't understand what it is I or Mortensen did to violate anything.  We haven't tried to collect anything from [Renfrow]."  Id. at 39.

[73]Id. at 58.

proceeding is no substitute for service of process, and Pettigrew's actual knowledge does not confer upon the Court personal jurisdiction over Pettigrew.[74]   Under Bankruptcy Rule 7004, service of process on Pettigrew, an individual, could be accomplished by mailing, but the mailing must be addressed to the "dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession."[75]   Renfrow addressed the summons and Complaint to Pettigrew c/o Mortensen and mailed it to Mortensen's law office. In bankruptcy cases under limited circumstances, a defendant might be effectively served through her lawyer under Bankruptcy Rule 7004(b)(8), but only if the lawyer was "authorized by appointment or by law to receive service of process" as the defendant's agent.[76]   Renfrow did not produce any evidence that Mortensen was authorized by Pettigrew to accept service of process on her behalf.

Because Pettigrew was not properly served, the Court lacks personal jurisdiction over her and thus has no authority to enter a judgment, default or otherwise, against her in this adversary proceeding.   The Request to Set-Aside Default will be granted as to Pettigrew.

---

[74]See, e.g., Meyers v. Pfizer, Inc., 581 Fed.Appx. 708, 711 (10th Cir. 2014), *citing* Hukill v. Okla. Native Am. Domestic Violence Coalition, 542 F.3d 794, 802 (10th Cir. 2008) ("default judgment cannot be based on actual notice when service is defective").

[75]Fed. R. Bankr. P. 7004(b)(1).

[76]Fed. R. Bankr. P. 7004(b)(8).  See, e.g., In re Focus Media Inc., 387 F.3d 1077 (9th Cir. 2004).

### C.     Culpable conduct - willful blindness.

Despite his actual knowledge of Renfrow's bankruptcy filing,[77] Mortensen chose not to enter an appearance on behalf of Pettigrew in the bankruptcy case, to file an adversary proceeding to except Pettigrew's claims from discharge, or to otherwise act to protect Pettigrew's interest in the Prepetition Tort Claims.   Instead, he took the position that Renfrow's failure to schedule the Prepetition Tort Claims insulated the claims from discharge.  He perpetuated this argument before Judge Nightingale in opposing Renfrow's attempts to obtain dismissal of the discharged claims, and in response to Brown's letter demanding dismissal.  He (and Pettigrew) behaved as if the discharge did not apply to the claims when they learned that Renfrow filed her Complaint seeking damages for violating the discharge.  That position, however, is contrary to well-established bankruptcy law.

Section 523(a)(3) of the Bankruptcy Code governs the effect of the discharge on unscheduled or omitted creditors.  If a Chapter 7 creditor does not get official notice of the bankruptcy case because its debt was not scheduled, the debt may be excepted from the discharge only in very limited circumstances.  Under § 523(a)(3)(A), if the Chapter 7 trustee in such a case liquidates and distributes assets of the estate, and the creditor did not have actual knowledge of the bankruptcy case in time to file a proof of claim and receive a

---

[77]It is important to note, at this point, that under the Bankruptcy Code and Rules, the notice of commencement of the case and the notice of the discharge are not required to be served according to the rules governing service of process, so the discussion in the previous subsection of this Order is not applicable to notices. The automatic stay and the discharge injunction are binding on any creditor with actual knowledge of the bankruptcy case, whether or not the creditor received proper notice.

distribution, the debt is not discharged.[78]   In no-asset cases, however, there is no deadline to file a proof of claim and unscheduled creditors will receive the same treatment as scheduled creditors – neither will receive any distribution from the estate.   Accordingly, claims of unscheduled creditors in no-asset cases are generally discharged, even if those creditors had no knowledge of the bankruptcy.[79]   Renfrow's case was a no-asset case.[80]

Section 523(a)(3)(B) provides relief to an unscheduled creditor whose debt is arguably non-dischargeable under § 523(a)(2), (a)(4), or (a)(6).   If the creditor did not have actual knowledge of the bankruptcy case in time to file an adversary proceeding objecting to dischargeability of the debt, the creditor is permitted to file its complaint after the deadline, and if the creditor prevails, the debt is not discharged.[81]   "Creditors that prove the applicability of § 523(a)(3)(B) are not entitled to an automatic exception of their claims from a debtor's discharge under § 523(a)(2), (4), or (6).   Rather, § 523(a)(3)(B) simply permits the filing of a § 523(a)(2), (4), or (6) complaint after [the deadline]."[82]

Debts of unscheduled creditors with *actual knowledge* of the bankruptcy filing prior to the deadlines are not excepted from discharge by § 523(a)(3).   "[A]ctual knowledge of

---

[78]<u>See</u> 11 U.S.C. § 523(a)(3)(A).

[79]<u>In re Cerrudo</u>, 214 B.R. 500, 502 (Bankr. N.D. Okla. 1997).   Brown referred Mortensen to this case in a September 2017 email exchange.   <u>See</u> Plaintiff's Exhibit 111.

[80]<u>See</u> Chapter 7 Trustee's Report of No Distribution, Main Case Doc. 25.

[81]<u>See</u> 11 U.S.C. § 523(a)(3)(B) and (c)(1); Fed. R. Bankr. P. 4007(b).

[82]<u>In re Schicke</u>, 290 B.R. 792, 799 (B.A.P. 10th Cir. 2003), *aff'd* 97 Fed.Appx. 249 (10th Cir. 2004).

25

[debtor's] chapter 7 bankruptcy case, in ample time for [the creditor] to prepare and timely file the necessary request for determination of dischargeability, bars [the creditor] from challenging the dischargeability of their claim . . . after the bar date for such complaints."[83] "It is well established in the Tenth Circuit that upon the receipt of notice *or knowledge* of a Chapter 7 case, creditors must affirmatively protect their rights by informing themselves of applicable deadlines and timely filing complaints to except their claims against the debtor from discharge.  The informed creditor's *duty* to act timely insures the finality of the discharge granted [and] . . . creditors cannot attack the discharge of their individual debts."[84]

Both Pettigrew and Mortensen knew about Renfrow's bankruptcy at least two months before any relevant deadlines expired, and they sat on their hands rather than take the appropriate steps to attempt to exclude the Prepetition Tort Claims from discharge. Mortensen and Pettigrew practiced willful blindness as to the fact and effect of Renfrow's bankruptcy, and relied on their supposed ignorance in refusing to recognize Renfrow's discharge.

---

[83]In re Walker, 927 F.2d 1138, 1145 (10th Cir. 1991). "Section 523(a)(3)(B) explicitly places a burden on creditors with knowledge of bankruptcy proceedings to act to protect their rights." Id. (internal quotation marks and citation omitted).

[84]Schicke, 290 B.R. at 800 (emphasis added).  See also Yukon Self Storage Fund v. Green (In re Green), 876 F.2d 854, 857 (10th Cir. 1989) ("[A] chapter 7 creditor holding an unsecured claim [that has actual notice of the bankruptcy] does *not* have the 'right to assume' receipt of further notice.  . . . Standing on the formality of notice from the court will not excuse a creditor with actual notice of a bar date from its effect.  Indeed, a chapter 7 creditor with such notice has a duty to protect itself from being adversely affected.") (emphasis original) (citations omitted).

At the status conference before Judge Nightingale on October 2, 2017, Brown advised the court – and Mortensen – that he intended to reopen Renfrow's bankruptcy case to file a Complaint against Pettigrew and Mortensen.[85] After Mortensen was served, he did nothing, and apparently failed to advise Pettigrew that she was named as a defendant in the Complaint. After Brown alerted Pettigrew at the Grogan trial of the Complaint filed against her, Pettigrew immediately consulted Mortensen, who told her he would take care of it. But again, Mortensen did nothing. He did not contact Brown, enter an appearance, take issue with service of process, or otherwise take any action to defend himself or Pettigrew. By ignoring the Complaint, Mortensen continued his practice of conscious avoidance, or willful blindness, of the fact of Renfrow's bankruptcy and discharge. The Court cannot conclude that he was blameless with respect to the default he seeks to excuse and set aside.

**D.    No meritorious defense.**

At the April 18th Hearing, Mortensen and Pettigrew both testified that Pettigrew had not sued Renfrow after all, but instead had filed the Prepetition Tort Claims solely against Envision. They both swore that Renfrow was added as a party to the Envision Action solely in her capacity as the representative that acted on behalf of tortfeasor Envision, and that Pettigrew never intended to recover damages from Renfrow personally. Accordingly, they claimed as their meritorious defense that since Envision was not a debtor and did not receive a discharge, they had no obligation to dismiss the Prepetition Tort Claims.

---

[85]Plaintiff's Exhibit 116 at 4.

1.      **In the Answer and Counterclaim, Pettigrew seeks actual and punitive damages *from Renfrow*.**

The proposed defense is belied by the plain language of Pettigrew's Answer and Counterclaim.  Renfrow is identified in the caption as being sued "Individually."[86]  In the body of the pleading, Pettigrew states–

> Upon information and belief, Counter-Defendant Miranda Renfrow[] is the sole shareholder of Plaintiff's [Envision's] Professional Corporation [sic]. Counter-Defendant Renfrow is being sued *in her individual capacity* for her fraudulent and/or knowing misrepresentations.   Both Plaintiff/Counter-Defendant Envision and Counter-Defendant Renfrow will be referred to collectively as Plaintiff/Counter-Defendants.[87]

In the "First Cause of Action – Defamation Per Se," Pettigrew alleges that Envision filed a lawsuit accusing Pettigrew of embezzling, converting, and stealing Envision's funds and that the allegations are false and defamatory.[88]  The remaining paragraphs in the first cause of action allege conduct by both "Plaintiff/Counter-Defendants," and seek damages for lost earnings and  mental anguish and distress, as well as punitive damages from both Envison and Renfrow.[89]

The "Second Cause of Action – Intentional Infliction of Emotional Distress" is asserted solely against "Counter-Defendant Renfrow,"[90] and alleges –

---

[86]Answer and Counterclaim, Defendants' Exhibit E, at 1.

[87]Id. at 2, ¶ 15 (emphasis added).

[88]Id. at 3, ¶ 17.

[89]Id. at 3-4.

[90]Id. at 5.

26.     In firing [Pettigrew], and by falsely alleging that [Pettigrew] embezzled and/or stole funds, Counter-Defendant Renfrow intentionally and/or recklessly caused emotional distress to [Pettigrew].

27.     Counter-Defendant Renfrows [sic] actions were so extreme and outrageous as to go beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society.

28.     Further, Counter-Defendant Renfrow acted intentionally and/or with reckless disregard for the truth, which caused severe emotional distress to [Pettigrew] beyond that which a reasonable person could be expected to endure.

29.     Counter-Defendant Renfrow knew, or should have known, that these statements were false, and that these allegations were substantially certain to produce extreme emotional distress and anguish, humiliation, embarrassment, anger, disappointment, and worry in [Pettigrew].

30.     As a direct and proximate result of the conduct of Counter-Defendant Renfrow, [Pettigrew] has sustained, and will continue to sustain, mental anguish and distress.  Accordingly, [Pettigrew] is entitled to actual and compensatory damages in excess of $10,000 . . .

31.     Further, Counter-Defendant Renfrow acted intentionally, maliciously and in reckless disregard for the rights of [Pettigrew].  As a result, [Pettigrew] is entitled to recover punitive damages against Counter-Defendant Renfrow for these actions.[91]

The First Cause of Action seeks monetary relief from two defendants, Envision and Renfrow, and the Second Cause of Action seeks monetary relief exclusively from Renfrow.

---

[91]Id. at 5-6.

At the April 18th Hearing, Mortensen explained why he thought it should be obvious that no claims had been asserted against Renfrow in Pettigrew's Answer and Counterclaim. He testified–

> Now, my review of corporate law is that under Title 18, Section 1124, actions against officers, directors or shareholders to enforce liability of a corporation, that no suit may be brought against an officer, director or shareholder. . . . I would not have been able to name her individually for her actions. . . .

> So I knew and understood that she had protection of the corporation and that under the statute I could not bring any action against her whatsoever. But since she was the one that made statements I'm not going to claim a corporation who's this entity out there that doesn't exist but on paper form for the most part, they're not the ones that made statements. I have to identify who it was that said what they said.

> I also have to join her under the joinder rules in Oklahoma as what I would believe to be an indispensable party or a person that would have facts and knowledge about the case that would have to be associated with that particular case under joinder. I know under joinder I would not be able to recover any funds or judgment from her. It was against this corporation but I'm naming her individual actions and what she did in order to bind the corporation[.] . . . At the end . . . I'm talking about recovering punitive and exemplary damages to deter the plaintiff/counter defendants and that is the corporation but I would have to allege certain acts against this individual that rise to the level in my pleading in order to not be subjected to a motion to dismiss[.] . . . But they were counterclaims because they were against the plaintiff, the corporation. If I wanted to sue her individually, I know I would have filed a cross claim and brought her in if I sought to hold her liable . . . for any of her acts. . . .

> And joinder doesn't mean that that person is going to be responsible for any judgment against the corporation because even in joinder any judgment is handed down with respect to their individual liabilities.

> I did not believe at this time that this was a suit to collect money from Dr. Renfrow. It was the corporation and entirely the corporation. . . . [P]ermissive joinder was pursued because she was this necessary party.

*****

30

[T]here is a counterpart to the corporate statutes.  It's repeated again in Title 12 . . . [Section] 682. . . .   [In] attempting to separate out a shareholder, director and officer of the corporation for personal liability I would have had to have pled something to the effect that piercing the veil. . .

I certainly didn't have any evidence to suggest that the corporate veil could be pierced[.][92]

The validity of Mortensen's legal analysis is addressed in subparagraph 4 below.

## 2.    The defense is inconsistent with the position Pettigrew and Mortensen took in the bankruptcy case.

In the Joint Motion seeking relief from the automatic stay that Mortensen reviewed and authorized to be filed on behalf of Pettigrew, Grogan and Pettigrew recited, as a matter of fact, that Renfrow was a third-party defendant in the Envision Action and that Pettigrew intended to continue to pursue the Prepetition Tort Claims against Renfrow personally.  They further asserted, erroneously, that stay relief was warranted because § 523(a)(6) precluded Renfrow from discharging the Prepetition Tort Claims.[93]  Mortensen's current position, that Pettigrew did not sue Renfrow personally, is wholly inconsistent with the position taken in the Joint Motion.

Equitable estoppel "prevent[s] a party from taking a legal position inconsistent with an earlier statement or action that places his adversary at a disadvantage" (Penny v. Giuffrida, 897 F.2d 1543, 1545 (10th Cir.1990)). There are four elements of a traditional estoppel claim (id. at 1545–46):

---

[92]Tr. 4/18/18 at 47-50.

[93]In at least five places in the Joint Motion, Pettigrew represents that the intentional tort claims are asserted against the "Debtor" and are non-dischargeable.  See Renfrow Exhibit 109 at ¶¶ 3, 9, 11 (twice), and 12. Mortensen now says that those very specific representations were not true, but he did not correct them before authorizing Phipps to file the Joint Motion.

> (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the other party's conduct to his injury.[94]

Regardless of what Pettigrew and Mortensen intended when they asserted the tort claims in the first place, the request for stay relief, filed in June 2017, unambiguously represented that Pettigrew intended to prosecute the Prepetition Tort Claims against Renfrow personally as a third-party defendant in the Envision Action.  Renfrow did not learn that Pettigrew would argue that the Prepetition Tort Claims sought damages solely from Envision until the April 18th Hearing.  From the date of her discharge, June 15, 2017, until the April 18th Hearing, Renfrow relied to her detriment upon the representations made in Pettigrew's Answer and Counterclaim, and those made in the Joint Motion, expending time, money and emotional capital unsuccessfully seeking dismissal of the claims.  Renfrow's reliance was reasonable; her belief that Pettigrew sued her personally was entirely consistent with the plain text of the Answer and Counterclaim and with the Joint Motion.  Only when it appeared that Renfrow may be awarded damages for their discharge violations did Mortensen and Pettigrew adopt the position that they never intended to hold Renfrow liable.

### 3.    The defense was not raised in a timely manner or in good faith.

If Mortensen actually believed that Renfrow had not been sued in her individual capacity, he kept that belief to himself until the April 18th Hearing.  Thus, his defense was

---

[94]Spaulding v. United Transp. Union, 279 F.3d 901, 909 (10th Cir. 2002).

not raised in a timely manner.[95]  All previous justifications offered by Mortensen for refusing to dismiss the Prepetition Tort Claims echoed four themes:  (1) neither he nor Pettigrew knew Renfrow received a discharge because the discharge order had not been sent to them; (2) the Prepetition Tort Claims were nondischargeable; (3) he had not filed any pleadings in the Envision Action or "engaged in a single instance that could be construed as a 'collection activity'"[96] in violation of the discharge; and (4) Grogan and her attorneys committed the violation, not Mortensen.

For instance, in his affidavit filed on February 26, 2018 (the last pleading filed before the April 18th Hearing), Mortensen stated "I was not provided notice of the bankruptcy discharge until long after it was already completed."[97]  In seeking to vacate the Clerk's entry of default, he declared Renfrow's Complaint lacked merit because "I have not undertaken any efforts whatsoever to collect on *any claim filed in state court against Miranda Renfrow,* even though there exists an abundant amount of evidence from bank records and discovery conducted in the 'embezzlement' matter to prove that Mirdanda [sic] Renfrow lied about an employee (Carrie Pettigrew) embezzling funds from her in order to cover-up her own incompetence and frivolous spending habits which eventually led her to file bankruptcy with

---

[95]A proposed meritorious defense must be "presented in a timely enough fashion to permit the opposing party to question the legal sufficiency of the defense."  <u>Stone</u>, 588 F.2d at 1319.

[96]Request to Set-Aside Default (Adv. Doc. 22) at 4, ¶ 17.

[97]Affidavit, Exhibit 1 to Request to Set-Aside Default, at 2, ¶ 11.

this court."[98]  He also declared: "I would remind counsel for the Plaintiff that any continued collection actions that Plaintiff complains of are actually actions of [Grogan in the Grogan Action], which was a case that was consolidated with Plaintiff's for discovery purposes only."[99]  Why does this affidavit not mention that no violation of the discharge occurred because Renfrow is not a defendant in the Envision Action?

In Brown's letter to Mortensen dated September 11, 2017, Brown characterized the Prepetition Tort Claims as claims *against Renfrow*.[100]  Mortensen did not challenge that characterization and did not indicate that Pettigrew did not intend to hold Renfrow liable. Instead, he argued that the discharge did not apply to the claims because the claims were not scheduled, and further "if there had been any notice that Ms. Renfrow was seeking to discharge the defamation counterclaim in the bankruptcy, I was fully prepared to seek a finding that the claim was non-dischargeable due to an abundance of evidence that Ms. Renfrow's actions were intentional - as opposed to negligent - and that she fully intended to cause an injury to Mrs. Pettigrew."[101]

---

[98]Id. at 2, ¶ 10 (emphasis added).

[99]Id. at 3, ¶ 13.  This statement is disingenuous, as the Complaint "complains of" Pettigrew's and Mortensen's refusal to dismiss the Prepetition Tort Claims in the Envision Action. Grogan's conduct in the Grogan Action is the subject of a separate adversary proceeding.

[100]Defendants' Exhibit G.

[101]Plaintiff's Exhibit 111.

Likewise, on October 2, 2017, when Brown advised Judge Nightingale that he intended to reopen the bankruptcy case to file this adversary proceeding, Mortensen did not point out that Pettigrew's tort claims were lodged solely against Envision. Instead, he stated that he intended to reopen the bankruptcy case to "get a finding over there that this claim – it is not a debt, it is a claim at this point in time that is non-dischargeable."[102]

On February 20, 2018, when Mortensen filed the first motion seeking to set aside the default, he again asserted as defenses his ignorance of the discharge, not being responsible for setting the pretrial hearing in the Envision Action, and Brown's "confusion about which attorney was continuing to prosecute claims against [Renfrow]."[103] At the hearing held on February 21, 2018, Mortensen never said that Pettigrew did not intend to hold Renfrow personally liable in the Envision Action. After that hearing, Mortensen filed a motion in the Envision Action to "voluntarily dismiss the above-entitled cause of action against the Counter-Defendant Miranda Renfrow."[104]

Mortensen admitted that he never advised Brown that he believed that Pettigrew was barred by Oklahoma law from suing Renfrow individually for actions she took on behalf of her professional corporation.[105] That Pettigrew did not sue Renfrow personally was never suggested in any of Mortensen's responses to the many requests and demands Brown made

---

[102]Plaintiff's Exhibit 116 at 4-5.

[103]Adv. Doc. 16 at 5.

[104]Plaintiff's Exhibit 115.

[105]Tr. 4/18/18 at 50.

in pursuit of dismissal of the claims.  Accordingly, the Court concludes that the defense was not timely asserted, nor was it asserted in good faith.[106]

### 4.   The defense is legally insufficient.

A party seeking to set aside default must set forth "a sufficient elaboration of facts to permit the trial court to judge whether the defense, if the movant's version were believed, would be meritorious" or legally sufficient.[107]  Mortensen's argument that 18 O.S. § 1124 and 12 O.S. § 682 precluded Pettigrew from suing Renfrow personally for defamation and intentional infliction of emotional distress is just plain wrong.  Section 1124 of title 18 of the Oklahoma Statutes provides:

> A. When the officers, directors or shareholders of any corporation shall be liable *by the provisions of the Oklahoma General Corporation Act* to pay the debts of the corporation, or any part thereof, any person to whom they are liable may have an action, at law or in equity, against any one or more of them, and the petition shall state the claim against the corporation, and the ground on which the plaintiff expects to charge the defendants personally.
>
> B. No suit shall be brought against any officer, director or shareholder for any debt of a corporation of which he is an officer, director or shareholder, until judgment is obtained therefor against the corporation and execution thereon returned unsatisfied.[108]

This statute requires a creditor to exhaust its remedies against the corporation before suing a shareholder, officer or director to collect a corporate debt, but it applies only in situations

---

[106]The Court simply does not believe that Mortensen or Pettigrew did not intend to sue or recover damages from Renfrow.  It appears that the rationale was an after-the-fact attempt to justify their refusal to recognize Renfrow's discharge.

[107]<u>Stone</u>, 588 F.2d at 1319.

[108]18 O.S. § 1124 (emphasis added).

where the Oklahoma General Corporation Act makes shareholders or other individuals liable for corporate debts – for instance, when a shareholder or subscriber did not timely or fully pay for their stock, or when a director allows unlawful dividends to be paid.[109]   The statute is irrelevant to the issue of whether intentional tort claims may be asserted against officers, directors or shareholders for their own tortious conduct.

Further, the version of 12 O.S. § 682 in effect when Pettigrew sued Envision and Renfrow provided in pertinent part:

> B. No suit or claim of any nature shall be brought against any officer, director or shareholder for the debt or liability of a corporation of which he or she is an officer, director or shareholder, until judgment is obtained therefor against the corporation and execution thereon returned unsatisfied. This provision includes, but is not limited to, claims based on vicarious liability and alter ego. *Provided, nothing herein prohibits a suit or claim against an officer, director or shareholder for their own conduct, act or contractual obligation arising out of or in connection with their direct involvement in the same or related transaction or occurrence.*[110]

Contrary to Mortensen's argument, Section 682 states that it *does not prohibit* suits or claims seeking to hold officers, directors or shareholders personally liable for their own conduct or acts, even if done on behalf, or for the benefit, of the corporation.[111]   The argument that

---

[109]See, e.g., 18 O.S. §§ 1043, 1045, 1053.

[110]12 O.S. Supp. 2013 § 682 (emphasis added).  The statute was amended, effective November 1, 2016.

[111]See Stanley Filter Co. v. Wingmaster Sales, LLC, 2017 WL 6372244 at *3-4 (N.D. Okla. Dec. 13, 2017), *citing* Oklahoma Federated Gold and Numismatics, Inc. v. Blodgett, 24 F.3d 136, 141 (10th Cir. 1994); MTG Guarnieri Mfg., Inc. v. Clouatre, 239 P.3d 202, 214 (Okla. Civ. App. 2010); Preston-Thomas Const., Inc. v. Cent. Leasing Corp., 518 P.2d 1125, 1127 (Okla. Civ. App. 1973); Alltech Comm., LLC v. Teleworx Comm., LLC, 2010 WL 3732150 (N.D. Okla. Sept. 20, 2010) at *3-4; Shelton-Heppel v. Parker Pest Control, Inc., 2010 WL 2737130 (W.D. Okla. July 12, 2010) at *2; Chellen v. John Pickle Co., 446 F. Supp.2d 1247, 1293 (N.D. Okla. 2006).

Pettigrew *did not* sue Renfrow personally because she *could not* sue Renfrow personally has no legal basis.

**V.    Conclusion**.

For the reasons stated herein, Defendants' Objection and Request to Set-Aside the Clerk's Entry of Default is granted in part and denied in part.

The Clerk's Entry of Default against Pettigrew is vacated.  The Court lacks personal jurisdiction over Pettigrew due to defective service of process.  Under Rule 4(m) of the Federal Rules of Civil Procedure, applicable herein pursuant to Bankruptcy Rule 7004(a)(1), a plaintiff must effect service within 90 days after the Complaint is filed.  The time limit for service on Pettigrew has expired.  Under Rule 4(m), "the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against the defendant or order that service be made within a specified time."[112]   The Court orders Renfrow to obtain an alias summons, serve the summons and Complaint upon Pettigrew within 21 days from the date of this Order, and file a certificate of service with this Court.[113]

---

[112]Fed. R. Civ. P. 4(m).

[113]"The preliminary inquiry to be made under Rule 4(m) is whether the plaintiff has shown good cause for the failure to timely effect service."  Espinoza v. United States, 52 F.3d 838, 841 (10th Cir. 1995).  "If good cause is shown, the plaintiff is entitled to a mandatory extension of time. If the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted."  Id.  In this case, the Court grants Renfrow additional time to effect service on Pettigrew, mainly because Pettigrew did not ask for dismissal.  She requested only that the default be set aside to afford her an opportunity to answer the Complaint.  Dismissing the Complaint against Pettigrew without prejudice, and requiring Renfrow to start over, would be a waste of everyone's time and resources.

Mortensen's request to set aside the Clerk's Entry of Default is denied.  Mortensen was properly served by mail at his regular place of business and failed to file a responsive pleading.  He failed to establish cause to vacate the entry of default.  The record is sufficient to find that Mortensen willfully violated the discharge injunction and caused Renfrow pecuniary harm.  Mortensen's perpetual attacks on the validity of the discharge to justify his refusal to dismiss the Prepetition Tort Claims were acts in violation of the "injunction against the . . . continuation of an action . . . to recover . . . any such debt as a personal liability of the debtor."[114]  An evidentiary hearing on Renfrow's Motion for Default Judgment against Mortensen will be set to permit Renfrow to present evidence of her damages.

**SO ORDERED** this 11th day of September, 2018.

DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE

---

[114]11 U.S.C. § 524(a)(2).